IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL WISNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 12-CV-3142 |
| ) | |
| FORREST ASHBY, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act, 725 ILCS 207/1, et seq.

In a prior order, the Court identified the following claims in this case: 1) excessive force based on the incident which occurred on March 20, 2012; 2) deliberate indifference to the creation of a substantial risk of serious harm; 3) deliberate indifference to Plaintiff's serious psychiatric need; 4) deliberate indifference to Plaintiff's need for medical and psychiatric care after the alleged excessive force; and, 5) retaliation for exercising protected First Amendment rights.

The case is now before the Court on Defendants' summary judgment motions. At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

Of the claims identified above, Plaintiff's responses (d/e's 69, 93), even liberally construed, address only the claims of excessive force and failure to intervene. The Court will, therefore, start with those claims.

The events set forth in the following paragraphs are taken from Plaintiff's deposition testimony and set forth as facts for purposes of this order only. Defendants have a different version of events, but at this stage the Court must accept Plaintiff's version of facts which he personally experienced.

According to Plaintiff, Plaintiff was placed in his room on a two hour "cool down" at the end of the day on March 19, 2012, because Plaintiff had "got into it with another resident." (Pl.'s Dep. p. 90.) A cool down period officially ends when the guard comes to "assess"

the resident.  Id. p. 93.  The next morning, on March 20, 2013, Plaintiff realized that he had not been told that his cool down was over.  Plaintiff pressed the intercom button in his room and asked Defendant Sandstrom whether Plaintiff's cool down was over and whether Plaintiff could get breakfast and his medicine.  Defendant Sandstrom looked into the matter and then told Plaintiff that since Plaintiff had missed breakfast and his medicine, he would receive neither.  Plaintiff asked to speak to a "white shirt"—a guard with more authority than he thought Defendant Sandstrom had.  Unbeknownst to Plaintiff, Sandstrom was a "white shirt."  Sandstrom told Plaintiff that she was a sergeant and called Plaintiff an asshole.  Plaintiff got upset, called Sandstrom a bitch, and walked out of his room, a move which Plaintiff himself calls "unauthorized movement."  (Pl.'s Dep. 93).

At this point, Defendant Sandstrom told Plaintiff that she was offering him another two hour cool down.  Plaintiff responded, "I'm not even done with the first one, how are you going to offer me a second one?"  (Pl.'s Dep. p. 93.)  Sandstrom then called a "code," a call for other guards to come help with the situation.  Defendants

Teel, Kelly, Hougas, Dougherty, Parsons, Pool, Wear, Mantzke, and Zimmerman came to Plaintiff's unit in response to the code.

Defendant Hougas talked Plaintiff into going back into his room on a two hour cool down. The other guards then began to leave the unit because the situation had been diffused, but, unbeknownst to Plaintiff, Plaintiff's conversation with his roommate about suing over the incident was being broadcast over the intercom. Plaintiff surmises that Defendants heard that conversation, and, in retaliation, came running to Plaintiff's room. According to Plaintiff, he was instructed to turn around and offer his hands for cuffing, an order which he obeyed. After Plaintiff was cuffed, Defendant Kelly pushed Plaintiff into Plaintiff's room and slammed Plaintiff to the floor, hitting Plaintiff's head on a property box and causing injury to Plaintiff's face. Defendant Kelly sat on Plaintiff and kept telling Plaintiff to stop resisting even though Plaintiff was not resisting. An inference arises that Defendants Mantzke, Teel, Wear, and Dougherty were also in Plaintiff's room. Plaintiff's shoes were ripped off his feet, causing injuring to Plaintiff's ankle. Defendants Biermann and Pool were not in the room, but were in positions outside the room which blocked others'

views.  (Pl.'s Dep. 94-109, 127, 134, 150)  Plaintiff was taken to "special management," which Plaintiff describes as a segregation cell.

Based on Plaintiff's account as described above, the Court cannot rule out a reasonable inference that the Defendants who were in Plaintiff's room used excessive force or were in a position to intervene to stop that excessive force.  Additionally, a reasonable inference arises that Defendants Biermann and Pool, by blocking others' views, enabled the excessive force and also failed to intervene.  A reasonable inference also arises that Defendant Sandstrom, though not directly involved in the excessive force, may have directed or approved of that excessive force.  Summary judgment is, therefore, denied on the excessive force and failure to intervene claims against Defendants Kelly, Mantzke, Wear, Teel, Biermann, Pool, Dougherty, and Sandstrom.  Plaintiff testified in his deposition that he no longer wants to pursue a claim against Teel, (Pl.'s Dep. p. 154.), but the Court will wait for written confirmation from Plaintiff.

A claim against these same Defendants for retaliation for Plaintiff's free speech also survives summary judgment, even

though Plaintiff does not address the claim in his responses. Plaintiff's deposition testimony allows an inference that the guards considered the situation resolved until the guards heard Plaintiff's talk about suing them. Defendants have a different story, but, the Court cannot rule out a reasonable inference in Plaintiff's favor. Plaintiff stated in his deposition that he intends to withdraw the retaliation claim, (Pl.'s Dep. pp. 170-71), but the Court will wait for written confirmation from Plaintiff.

No reasonable jury could find the other Defendants—Atkinson, Roth, Wilcyznski, Ashby, Baptist, Hammers, Williams, Winters, Tinwalla, Hougas, Parson, and Zimmerman—liable for excessive force, failure to intervene, or retaliation. These Defendants were either not on Plaintiff's unit during the incident or were not in a position where they could see or intervene in the alleged excessive force, by Plaintiff's own account. (Pl.'s Dep. pp. 107-110.); Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009)(bystander liability is premised on a defendant's knowledge that excessive force is being used and a "realistic opportunity to prevent the act from occurring.").

Plaintiff does not respond to the motions for summary judgment on the other claims identified in the prior order—the failure to protect him from a substantial risk of serious harm and the failure to provide him needed psychiatric and medical care after the incident as well as adequate psychiatric care in general. The motions for summary judgment demonstrate that no reasonable jury could find for Plaintiff on these claims.

Plaintiff's failure to protect claim is based on disrespectful comments and offensive name-calling by some of the Defendants who are DHS employees, names like asshole, little bitch, punk, baby, and retard. (*See, e.g.,* Pl.'s Dep. pp. 93, 122, 164-65.) Plaintiff believes that the remarks encourage residents to treat Plaintiff the same way. (Pl.'s Dep. pp. 164.) However, unprofessional and offensive name-calling does not alone amount to a constitutional deprivation. *See, e.g.,* DeWalt v. Carter, 224 F.3d 607, 614 (7th Cir. 2000)("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). Plaintiff does not contend, nor does the record support an inference, that the remarks put him at a serious

risk of substantial harm or that he is at any serious risk of substantial harm.

Plaintiff's failure to protect claim is also based on his allegation that Defendants Williams and Winters told Plaintiff that Plaintiff was being "given" to resident Webb, a resident who lived on a different unit than Plaintiff but who had opportunities to interact with Plaintiff during yard and gym.  According to Plaintiff, Plaintiff stopped interacting with Webb after being told this by Winters and Williams on March 15, 2012, and after learning that Webb had been telling other residents that Plaintiff "belonged" to Webb.

Plaintiff does not dispute that his fears of assault by resident Webb never materialized.  Plaintiff also does not dispute that he has had no interaction with Webb after March 15, 2012, the day that Defendants Winters and Williams purportedly made their comments about giving Plaintiff to Webb.  (Pl.'s Dep. p. 169.)  Plaintiff and resident Webb no longer live on units which are combined together for yard or gym.  (Biermann Aff. ¶¶ 5-8, d/e 38-1.)  Plaintiff cannot succeed on a failure to protect claim regarding risks that were never realized and are no longer present. Babcock v. White, 102 F.3d 267 (7th Cir. 1996)(prisoner cannot maintain failure to protect claim

where assault never materialized and inmate was no longer at risk); Brown v. Budz, 398 F.3d 904 (7th Cir. 2005)(applying Eighth Amendment standard to failure to protect claim by sexually violent detainee).

Plaintiff also does not respond to Defendants' motions for summary judgment with regard to his psychiatric and medical care. Plaintiff stated in his deposition that he is suing Defendant Dr. Tinwalla because Dr. Tinwalla did not treat Plaintiff for bipolar disorder. (Pl.'s Dep. p. 79.) However, Plaintiff does not dispute Dr. Tinwalla's evidence that Plaintiff does not, in fact, have bipolar disorder and has never been treated for bipolar disorder either in prison or in the treatment center. Plaintiff also agrees that Dr. Tinwalla exercised his medical judgment when he concluded that Plaintiff did not have bipolar disorder. (Pl.'s Dep. p. 86.)

Similarly, the motion for summary judgment by Defendants Roth, Wilczynski, and Atkinson demonstrates that they did not deny any needed psychiatric care to Plaintiff, nor were they personally involved in any of the alleged deprivations. Plaintiff sues them only because they failed to do anything after Plaintiff told them about the excessive force. (Pl.'s Dep. pp. 26-33.) Roth,

Wilczynski, and Atkinson cannot be held liable for declining to initiate an investigation of Plaintiff's allegations.  See Soderbeck v. Burnett County, 752 F.2d 285, 293 (7th Cir. 1985)("Failure to take corrective action cannot in and of itself violate section 1983. Otherwise the action of an inferior officer would automatically be attributed up the line to his highest superior . . . .").  Likewise, Defendants Ashby, Winters, and Williams cannot be held liable solely because they held supervisory positions.  See Chavez v. Illinois State Police, 251 F.3d 612, 651 (7th Cir. 2001)(no respondeat superior liability under § 1983).

Plaintiff asserts two new claims in his responses to the summary judgment motions.  First, he alleges that Defendant Williams, then the head of security, refused to allow Plaintiff to have prescribed crutches after the incident.  Second, Plaintiff asserts that his procedural due process rights were violated regarding a disciplinary hearing and punishment he received as a result of the incident on March 20, 2012.

Plaintiff may not amend his complaint through a response to a summary judgment motion. Anderson v. Donahoe, 699 F.3d 989, 997 (7th Cir. 2012)("[A] plaintiff 'may not amend his complaint

through arguments in his brief in opposition to a motion for summary judgment.'")(quoted cite omitted).  Plaintiff never mentioned the lack of crutches in either his complaint or his deposition.  Nor did Plaintiff ever file an amended complaint explaining the basis for his dismissed procedural due process claim, as the Court had invited Plaintiff to do back in July of 2012.  (7/13/2012 Order.)  These new claims are not before the Court.[1]

**IT IS ORDERED:**

1. The motion for summary judgment by Defendants Atkinson, Roth, and Wilczynski is granted (d/e 67).

2. The motion for summary judgment by Defendants Ashby, Baptist, Biermann, Hammers, Williams, and Winters is granted as to Defendants Ashby, Baptist, Williams, Hammers, and Winters on all claims (d/e 71).  Said motion is denied as to Defendant Biermann.

---

[1] Even if these new claims were properly before the Court, Plaintiff has not pointed out any factual dispute for the jury to decide.  Plaintiff admitted in his deposition that he is only suing Defendant Williams because Williams was in charge of security, not because of any medical issue.  (Pl.'s Dep. pp. 111, 121-22.); Harmon v. Gordon, 712 F.3d 1044, 1051-52 (7th Cir. 2013)("'the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.'")(quoted cite omitted).  As for the procedural due process claim, the behavior committee's decision was already supported by some evidence—the statements of the security therapist aides.  Plaintiff also admits that he was guilty of unauthorized movement and called Defendant Sandstrom a bitch.  Plaintiff offers no evidence that submitting his own witness statements would have made any difference.  Piggie v. Cotton, 344 F.3d 674, 678 (7th Cir. 2003)(applying harmless error analysis to refusal to call witnesses in disciplinary hearings).

3. The motion for an in camera inspection by Defendant Tinwalla is granted (d/e 73). The documents filed under seal have been considered as part of Dr. Tinwalla's summary judgment motion.

4. The motion for summary judgment by Dr. Tinwalla is granted (d/e 75).

5. The motions for summary judgment by Defendants Hougas, Parsons, Pool, Sandstrom, Teel, Zimmerman, Dougherty, Kelly, Mantzke, and Wear are granted as to Defendants Hougas, Parsons, and Zimmerman. (d/e's 77, 80). Said motions are denied as to Defendants Mantzke, Kelly, Teel, Wear, and Dougherty.

6. Plaintiff remaining claims which will go to trial are excessive force, failure to intervene, and retaliation for the exercise of Plaintiff's free speech, all arising from the incident on March 20, 2012. These claims proceed against Defendants Kelly, Mantzke, Wear, Teel, Biermann, Pool, Sandstrom, and Dougherty.

7. Plaintiff's motion to request counsel is granted (d/e 84) to the extent that Plaintiff asks the Court to try to recruit pro bono

counsel to represent him at the final pretrial and trial. However, if the Court is unsuccessful, Plaintiff will have to proceed without an attorney.

8.  A final pretrial conference is scheduled for September 22, 2014, at 1:30 p.m.  Plaintiff shall appear by video conference. Defense counsel shall appear in person.

9.  The jury selection and trial are scheduled for December 9-12, 2014, beginning at 9:00 a.m. each day.

10. An agreed, proposed final pretrial order is due September 8, 2014.

11. Motions in limine are due September 8, 2014, with responses thereto due September 15, 2014.

12. The Court will send out proposed jury instructions and voir dire for discussion at the final pretrial conference. Additional or alternate instructions and additional voir dire questions are due September 8, 2014.

13. Plaintiff and Defense counsel must bring their exhibits, marked, to the final pretrial conference.

14. Objections to exhibits are due September 15, 2014. Objections must attach the exhibit at issue.

15. **The clerk is directed to issue a video writ to secure Plaintiff's presence at the final pretrial conference.**

16. **The clerk is directed to terminate Defendants Atkinson, Roth, Wilczynski, Ashby, Baptist, Hammers, Williams, Winters, Tinwalla, Hougas, Parsons, Zimmerman, and the unnamed Defendants.**

ENTER: March 6, 2014

FOR THE COURT:

<u>s/Sue E. Myerscough</u>
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE